# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## AT LEXINGTON

**CIVIL ACTION NO. 14-358-JMH-CJS**

**RICHARD ALLEN BAKER**                                   **PETITIONER**

**v.**               **REPORT AND RECOMMENDATION**

**DAN BOTTOM, WARDEN**                                    **RESPONDENT**

\* \* \* \* \* \* \* \* \* \*

Petitioner Richard Allen Baker has filed a *pro se* Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus. (R. 1). Respondent filed an Answer (R. 13), to which Baker filed a Reply (R. 15). Pursuant to local practice, this matter has been referred to the undersigned for preparation of a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it will be **recommended** that Baker's § 2254 Petition be **denied.**

## I.    BACKGROUND

On or about July 16, 2010, Baker sold cocaine to a confidential informant through a controlled drug buy.[1] (R. 13-3, at 2). On November 5, 2010, a Garrard County, Kentucky grand jury returned an indictment charging Baker with trafficking in a controlled substance, first degree, second or subsequent offense in violation of K.R.S. § 218A.1412 and for being a persistent felony offender in the first degree in violation of K.R.S. § 532.080. (R. 13-9). At the time, a person was guilty of trafficking in a controlled substance in the first degree under K.R.S. § 218A.1412 when he knowingly and unlawfully trafficked in a controlled substance, regardless of the quantity or type of

---

[1]Although not clear from the record, Baker claims that the amount of cocaine was 1.91 grams. (R. 1-1, at 4).

drug involved. K.R.S. § 218A.1412(1) (West 2002). A violation of K.R.S. § 218A.1412 was a Class C felony for a first offense, carrying a sentence of five to ten years' imprisonment, and a Class B felony for a second or subsequent offense, carrying a sentence of ten to twenty years' imprisonment. K.R.S. § 218A.1412(2) (West 2002); K.R.S. § 532.060(2) (West 2006).

Further, K.R.S. § 532.080 provided that a defendant qualified as being a persistent felony offender in the first degree if he was more than twenty-one (21) years old and stood convicted of a felony after having been convicted of two or more felonies. K.R.S. § 532.080(3) (West 2006). Subsection (6) of K.R.S. § 532.080 provided that a first degree persistent felony offender who stood convicted of another Class C or Class D felony shall receive a sentence of not less than ten years nor more than twenty years; for Class A or Class B felony conviction, the statute provided for a sentence of not less than twenty years but not more than fifty years, or life imprisonment. K.R.S. § 532.080(6)(a)-(b) (West 2006). Thus, if Baker was convicted of the charges set forth in the indictment, he faced a penalty range of twenty years to life in prison.

As the trial approached, the Commonwealth's Attorney offered Baker a sentence of twenty-five years of imprisonment in exchange for pleading guilty. (R. 13-3, at 2). Baker declined the offer against his attorney's advice that he accept it. (*Id.*).

On May 5, 2011, the day Baker's trial was set to begin, counsel for Baker informed the trial judge, Judge Hunter Daughtery, that Baker wished to enter a guilty plea to the charges against him. (R. 22, DVD of guilty plea, 5/5/2011, at 9:58:30 - 9:58:47). Counsel stated that Baker had recently listened to some incriminating jail phone calls and felt that it was in his best interest to plead guilty rather than go to trial. Counsel confirmed that Baker understood that his guilty plea would be an "open" plea as there were no offers available to him and that it would be up to the court to determine

2

his sentence. (*Id*. at 9:58:48 - 10:00:09). Based on this information, Judge Daughtery allowed counsel time to review the guilty plea paperwork with Baker. (*Id*. at 10:00:10 - 10:00:26, 10:02:16 - 10:06:12).

After Baker reviewed and signed his Motion to enter a guilty plea, Judge Daughtery proceeded to take Baker's plea. Baker was placed under oath and questioned by Judge Daughtery to ensure that he was competent to enter his plea of guilty and was doing so in a knowing, intelligent and voluntary manner. (*Id*. at 10:11:36 - 10:14:50). During the plea colloquy, Baker confirmed he had been given adequate time to discuss his case with counsel, Attorney Elizabeth Kidd, and that he was satisfied with her representation. (*Id*. at 10:12:26 - 10:12:34). Judge Daughtery read Baker the rights he was giving up by pleading guilty and Baker stated he understood his rights and the fact that he was giving them up by entering his guilty plea. (*Id*. at 10:12:35 - 10:13:10). Baker also confirmed that he had not been threatened or forced into entering his guilty plea and that no one had made any promises to him regarding his guilty plea and/or sentence. (*Id*. at 10:13:58 - 10:14:18). Based on Baker's responses during the colloquy, Judge Daughtery accepted Baker's plea. (*Id*. at 10:14:31 - 10:14:50).

At the conclusion of the plea colloquy, Judge Daughtery conferred with counsel to set sentencing. Attorney Kidd requested sentencing be set in June. In support of her request, Attorney Kidd stated that a new Kentucky law affecting drug offenses, House Bill 463, was due to become effective in June 2011 and she wanted Baker to have an opportunity to benefit from the new law. The Commonwealth's Attorney, Andy Sims, objected to the request, seeking to have sentencing set in May, prior to the effective date of House Bill 463. The judge informed the parties that he would

set the sentencing in May if Probation and Parole were able to complete Baker's Presentence Investigation Report (PSI) in time. (*Id*. at 10:14:51 - 10:16:30).

Sentencing was held on May 20, 2011. Upon review of the PSI that was prepared, counsel informed the court of various errors contained therein. (R. 13-3, at 11). The trial court, counsel, and Baker briefly discussed the errors and determined that correction of the errors would have no impact on Baker's sentence. (*Id*.). Accordingly, the trial judge proceeded with sentencing and sentenced Baker to twenty-five years of imprisonment. (*See* R. 13-8).

House Bill 463 (HB 463) became effective on June 8, 2011. 2011 Ky. Acts 4. Relevant here, HB 463 amended both K.R.S. §§ 218A.1412 and 532.080. Specifically, K.R.S. § 218A.1412 was amended to include a provision making trafficking in less than four grams of cocaine a Class D felony for a first offense and a Class C felony for a second or subsequent offense. *Id*. In addition, HB 463 amended K.R.S. § 532.080 to include the following provision:

> (10) (a) . . . this section shall not apply to a person convicted of a criminal offense if the penalty for that offense was increased from a misdemeanor to a felony, *or from a lower felony classification to a higher felony classification, because the conviction constituted a second or subsequent violation of that offense.*

*Id*. (emphasis added).

Baker subsequently filed a Motion to Vacate, Set Aside or correct Judgment and Sentence pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42. (R. 13-3, at 2). An evidentiary hearing was held before the trial court on November 16, 2012, at which Baker was represented by counsel. (R. 22, DVD of RCr 11.42 hearing, 11/16/2012, at 11:01:30 - 11:40:46). After considering the testimony presented at the hearing and the arguments of counsel, the trial court denied Baker's RCr 11.42 Motion. (R. 13-7; R. 22, DVD of RCr 11.42 hearing, 11/16/2012, at 11:34:50 -

4

11:40:46). In its order denying the Motion, the trial court stated that "[c]ounsel stipulated that the only issues to be heard were whether counsel properly investigated the case and whether counsel gave sound advice to [Baker]" prior to his guilty plea. (R. 13-7). The trial court held that Baker's ineffective assistance of counsel arguments were without merit, finding that his counsel performed an adequate investigation and that Baker, who was facing a potential life sentence due to his 21 prior felony convictions, 11 of which were for trafficking, likely would have received a longer sentence had the case proceeded to trial.[2] (*Id.*).

Baker filed a *pro se* appeal of the trial court's denial of his RCr 11.42 Motion. (*See* R. 13-6). Baker was initially appointed counsel to represent him on appeal. However, counsel was permitted to withdraw based on the representation to the court that Baker's post-conviction proceeding was "not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense." (R. 13, at 3). On August 22, 2014, the Kentucky Court of Appeals affirmed the trial court's ruling denying relief. (R. 13-3).

Now before the Court is Baker's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus. (R. 1). In support of his Petition, Baker asserts three claims of ineffective assistance of counsel,[3] four claims of error by the trial court, and one claim of cumulative error. (R. 1-1). Specifically, Baker argues that his trial counsel was ineffective for: 1) failing to inform him of HB 463 prior to

---

[2]The court also noted that Baker did not receive the benefit of the new law (HB 463) because, "[t]he Commonwealth, being aware of the imminent changes in the law, objected to any delay of the trial or sentencing due primarily to [Baker's] extraordinarily bad record." (R. 13-7).

[3]In his Petition, Baker presents seven grounds for relief, the first two of which are claims of ineffective assistance of counsel. However, ground three of the Petition, although presented as a claim of trial court error, also includes an allegation of ineffective assistance of counsel and the Court addresses ground three of the Petition as both an ineffective assistance of counsel claim and a claim of trial court error.

his guilty plea and allowing him to be sentenced under the versions of K.R.S. §§ 218A.1412 and 532.080 in place prior to HB 463's effective date; 2) failing to conduct adequate pretrial preparation and investigation; and 3) allowing his Presentence Investigation Report to contain misleading and improper information at sentencing. Further, Baker argues that the trial court erred when it: 1) sentenced him using an inaccurate Presentence Investigation Report; 2) accepted his guilty plea and enhanced his sentence under both K.R.S. §§ 218A.1412 and 532.080; 3) failed to impose a sentence for the underlying trafficking charge prior to sentencing him on the Persistent Felony Offender (PFO) charge; and 4) sentenced him to a sentence disproportionate to the sentences of other defendants charged with similar offenses. Finally, Baker claims that the cumulative errors of his trial counsel and the trial court prejudiced him.

## II.    ANALYSIS

### A.    Governing Legal Standard

Review of a state prisoner's petition for habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. The AEDPA sets forth the substantive standards for granting habeas relief by providing:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet,' *Harrington v. Richter*, 562 U.S. [86, 102] (2011), and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). The petitioner carries the burden of proof. *Id*.

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams*, 529 U.S. at 405-06).

Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court [may] 'grant the writ if the state court identifies the correct governing legal principal from [the Supreme] Court's decision but unreasonably applies that principal to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. Thus, under the AEDPA, the question for this Court is "not whether a federal court believes the state court's determination was incorrect but whether the determination was unreasonable—a substantially higher threshold." *Schriro v.*

*Langrigan*, 550 U.S. 465, 473 (2007). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 102-03. Further, factual findings of the state court are presumed correct unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

It is also important to emphasize that federal courts may entertain a state prisoner's § 2254 petition for habeas relief only on the grounds that the prisoner's confinement violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). Thus, "[a] violation of State law is not cognizable in a federal habeas proceeding unless the violation is of constitutional magnitude." *Morales v. Coyle*, 98 F. Supp. 2d 849, 860 (N.D. Ohio 2000) (citing *Pulley v. Harris*, 465 U.S. 37 (1984); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state court determinations on state law questions.")). Accordingly, "general improprieties occurring in State court proceedings are cognizable only if they resulted in fundamental unfairness, and consequently violated the habeas petitioner's Fourteenth Amendment right to due process." *Morales*, 98 F. Supp. 2d at 860.

### B.    Procedurally Defaulted Claims

Before this Court can consider an issue in a § 2254 petition, a prisoner filing a petition must first exhaust all available state remedies. *See* 28 U.S.C. § 2254(b)(1); *see also O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To be deemed properly exhausted, each claim must have been

8

fairly presented to the state courts. *See* 28 U.S.C. § 2254(b), (c); *O'Sullivan*, 526 U.S. at 845 ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Wagner v. Smith,* 581 F.3d 410, 414-15 (6th Cir. 2009); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990). "Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Wagner*, 581 F.3d at 414-15. "Such a requirement affords state courts an opportunity to consider and correct any violation of federal law, thus expressing respect for our dual judicial system while also furnishing a complete record of a petitioner's federal claim as litigated in the state system, including the state court of last resort." *Hafley*, 902 F.2d at 482. "A federal court cannot grant habeas relief if there still is a potential state remedy for the state courts to consider." *Wagner,* 581 F.3d at 415.

In the present case, Baker has not met his burden of demonstrating that he has fairly presented in the state court all of his claims of error presented here. Baker raised all of the claims he presents in his § 2254 Petition in his RCr 11.42 Motion filed with the trial court and again on appeal of the trial court's denial of that Motion. (*See* R. 13-6). However, several of the claims should have been raised on direct appeal and were not. Under Kentucky law, collateral attacks brought under RCr 11.42 cannot include claims that could and should have been litigated in the direct appeal. *Leonard v. Commonwealth*, 279 S.W.3d 151, 156 (Ky. 2009). Baker's arguments that the trial court erred when it: 1) sentenced him using an inaccurate Presentence Investigation Report; 2) accepted his guilty plea and enhanced his sentence under both K.R.S. §§ 218A.1412 and 532.080; 3) failed to impose a sentence for the underlying trafficking charge prior to sentencing him on the persistent felony offender (PFO) charge; and 4) sentenced him to a sentence disproportionate to the

9

sentences of other defendants charged with similar offenses are substantive claims that, to receive

proper consideration by the state court, should have been raised in his direct appeal. Baker did not

file a direct appeal and the trial court and Kentucky Court of Appeals appropriately refused to

consider the merits of these claims. In its Opinion affirming the trial court's denial of Baker's RCr

11.42 Motion, the Kentucky Court of Appeals specifically held:

> An RCr 11.42 motion is restricted to collateral attacks on the ineffective assistance
> of counsel. The Kentucky Supreme Court has explained that RCr 11.42 motions are
> "a vehicle to attack an erroneous judgment for reasons which are not accessible by
> direct appeal." *Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983). The
> Court has also stated that RCr 11.42 motions are not appropriate for "mere errors of
> the trial court and '[i]n order for the rule to be invoked there must be a violation of
> a constitutional right, a lack of jurisdiction, or such violation of a statute as to make
> judgment void and therefore subject to collateral attack.'" *Thompson v.
> Commonwealth*, 117 S.W.3d 782, 785 (Ky. 2005)(quoting *Tipton v. Commonwealth*,
> 376 S.W.2d 290 (Ky. 1963). Therefore, claims concerning the trial court,
> prosecution, and sentence imposed by the trial court are outside the scope of an RCr
> 11.42 motion and we shall not address them.

(R. 13-3, at 12-13).

Nevertheless, the exhaustion requirement only bars federal habeas review if state remedies

are still available at the time a petitioner files his habeas petition. *See Williams v. Anderson*, 460

F.3d 789, 806 (6th Cir. 2006) (citing *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). When a

petitioner has not exhausted his state remedies, the federal court must determine whether the petition

should be dismissed in order to allow for the petitioner to present his claims to the state court. If the

petitioner failed to present his claims in state court, but would now be procedurally barred from

doing so, there is a procedural default for purposes of his federal habeas claim. *Coleman v.

Thompson*, 501 U.S. 722, 735 n.1 (1991); *Bechtol v Prelesnik,* 568 F. App'x 441, 446 (claim

10

procedurally barred where petitioner failed to exhaust state court remedies by fairly presenting issue to state appellate court and alternative state remedies are no longer available).

Here, as stated above, Baker could have raised his claims on direct appeal, but failed to do so. Kentucky law requires an appeal from any judgment be filed 30 days after the date of entry of the judgment. *See* Ky. R. Civ. P. 73.02(1). As the Judgment in this case was entered May 21, 2011 (*see* R. 13-8), over 5 years ago, requiring Baker to return to state court is unnecessary because the state court would deny his appeal on state procedural grounds. Thus, the claims of trial court error are procedurally defaulted by Baker's failure to argue them on direct appeal.

Baker's procedural default can only be excused if he can establish cause and prejudice for the failure to exhaust his claims in the state courts or if he can show actual innocence. *Nesser v. Wolfe,* 370 F. App'x 665, 670 (6th Cir. 2010); *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). In his Reply, Baker attempts to show cause for his procedural default by explaining that he did not file a direct appeal because he pleaded guilty to the charges against him and, therefore, "he was not entitled to a direct appeal of his case" and his "only avenue for relief was thorough [sic] an RCr 11.42 motion." (R. 15, at 9). Baker, citing to *Hollon v. Commonwealth*, 334 S.W.3d 431 (Ky. 2010), contends that Kentucky law permits a defendant to raise these claims in an RCr 11.42 motion even if they were not first raised on direct appeal and, therefore, his claims are not procedurally defaulted. *Hollon,* however*,* does not stand for that proposition.

In *Hollon*, the Kentucky Supreme Court held that the right to effective appellate counsel extends beyond the mere filing of a timely merits brief and that claims of ineffective assistance of appellate counsel are properly raised in a RCr 11.42 motion. *Hollon*, 334 S.W.3d at 442-43. This

11

holding does not support Baker's position that he properly raised his substantive claims of trial court error for the first time in his RCr 11.42 Motion. Further, Kentucky law is clear that a defendant cannot raise arguments in an RCr 11.42 motion that should have been raised on appeal. This is because "[i]t is not the purpose of RCr 11.42 to permit a convicted defendant to retry issues which could and should have been raised in the original proceeding . . . ." *Thacker v. Commonwealth*, 476 S.W.2d 838, 839 (Ky. 1972). Thus, Baker has failed to establish cause for his procedural default. Because Baker cannot show cause, an analysis as to prejudice is unnecessary.

A prisoner who fails to establish cause and prejudice may still be able to obtain review of a procedurally defaulted claim if his case fits within a narrow class of cases permitting review in order to prevent a fundamental miscarriage of justice, as when he submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Lee v. Brunsman*, 474 F. App'x 439, 442 (6th Cir. 2012) (citing *Bousley v. United States*, 532 U.S. 614, 623 (1998)). Moreover, the actual innocence exception deals with a "severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1933 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, 329 (1995)).

Actual innocence has not been shown by Baker in this case. He does not argue that he is actually innocent of the trafficking and PFO charges against him. In fact, Baker pleaded guilty to the charges in state court. Further, Baker has not presented any new evidence showing that it is more likely than not that no reasonable juror would have convicted him of the charges had he chosen to proceed to trial. Because Baker has not shown cause and prejudice for his procedural default nor

offered evidence of actual innocence, his claims of trial error are procedurally defaulted. Despite the fact that these claims are barred, the Court discusses them further in Section D below to complete the record in the event of objections.

### C.    Merits of Ineffective Assistance of Counsel Claims

Baker argues that his trial counsel was ineffective for: 1) failing to inform him of HB 463 prior to his guilty plea and allowing him to be sentenced under the versions of K.R.S. §§ 218A.1412 and 532.080 in place prior to HB 463's effective date; 2) failing to conduct adequate pretrial preparation and investigation; and 3) allowing his Presentence Investigation Report to contain misleading and improper information at sentencing.

The clearly established law for analyzing ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. To meet this standard, the Court set forth a two-part test. First, a defendant is required to show that counsel's representation fell "below an objective standard of reasonableness." *Id*. at 687-88. In reviewing this prong, the lower court is to apply a deferential standard, i.e. there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. If a defendant satisfies the first prong, he must also establish that counsel's deficient performance prejudiced him. *Id*. at 691-94. Specifically, he must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Defendant must establish both prongs by a preponderance of the evidence. *United States v. Pough*, 442 F.3d

959, 964 (6th Cir. 2006).  Thus, an error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error did not affect the judgment.

*Strickland*, 466 U.S. at 691.

The two-part *Strickland* test applies to claims of ineffective assistance of counsel where a

defendant pleads guilty.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  In the context of guilty pleas,

the first prong of the *Strickland* test is the same standard set forth above.  *Id*.  The second prong, on

the other hand, "focuses on whether counsel's constitutionally ineffective performance affected the

outcome of the plea process.  In other words, in order to satisfy the prejudice requirement, the

defendant must show that there is a reasonable probability that, but for counsel's errors, he would

not have pleaded guilty and would have insisted on going to trial."  *Id*.

> 1.    **Claim that counsel was ineffective for failing to inform Baker of HB 463 prior to his guilty plea and allowing him to be sentenced under the versions of K.R.S. §§ 218A.1412 and 532.080 in place prior to HB 463's effective date.**

> a.    **Guilty Plea**

In his § 2254 Petition, Baker alleges that his counsel was ineffective for failing to inform him

of House Bill 463 and its June 8, 2011 effective date prior to his guilty plea.  (R. 1-1, at 3, 5-6).

Baker claims that, but for his counsel's error in failing to inform him of HB 463, he would not have

pleaded guilty but would have "asked for mitigation of his sentence under the new House Bill."  (*Id*.

at 7).  Baker argues that his counsel's ineffective assistance "coerced" his guilty plea rendering his

plea unknowing, involuntary, and unintelligent.  (*Id*.).

While ineffective assistance of counsel can render a guilty plea invalid, Baker has not

demonstrated that his counsel was ineffective in this regard.  As discussed above, after Baker entered

his guilty plea, the trial judge conferred with counsel in attempt to set sentencing. Attorney Kidd, in Baker's presence, requested that sentencing be set in June so that Baker could have the opportunity to benefit from "the new law," HB 463. Baker did not appear surprised to hear his counsel refer to the new law, nor by her request for a sentencing date after its effective date in June. Further, the Commonwealth's Attorney, Andy Sims, objected to Attorney Kidd's request. Attorney Sims explained that he had recorded jail phone calls in which Baker had stated that he was intentionally attempting to postpone his trial so that he could receive the benefit of the amendments included in HB 463. Attorney Sims opposed Baker's efforts because HB 463 was not in effect when Baker committed the offenses in this matter. Baker did not deny Attorney Sims's allegations. Thus, review of the record reveals that Baker was well aware of HB 463 at the time he entered his guilty plea and refutes his claim that his counsel was ineffective for failing to inform him of HB 463.

Moreover, the Kentucky Court of Appeals considered Baker's argument that counsel "coerced" him into entering his guilty plea when rendering its decision affirming the trial court's denial of his RCr 11.42 Motion. Relying on *Strickland* and *Hill*, the court held:

> The record establishes that Baker signed his guilty plea knowingly and willingly and that his counsel was not deficient in explaining his plea. The record includes Baker's signed guilty plea. The video record of the May 5, 2011 plea colloquy shows Baker's counsel and the judge reviewing the guilty plea with Baker. It also shows Baker stating that he understood the contents and consequences of the plea. Additionally, the record lacks any indication that anyone threatened Baker, misrepresented the facts or realities of the plea to Baker, or made improper promises to Baker in exchange for his plea. Based on these facts, it is evident that Baker knowingly and willingly pleaded guilty. Therefore, the trial court properly concluded that Baker failed to prove at least one essential element of his ineffective assistance of counsel claim.

(R. 13-3, at 7-8).

15

Under federal law, this Court has the power to grant Baker's Petition if the decision of the Kentucky courts "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Here, the Kentucky Court of Appeals correctly identified *Strickland* and *Hill* as the controlling legal authority for considering claims of ineffective assistance of counsel when a defendant enters a guilty plea. (R. 13-3, at 3-5, 7). Thus, the issue becomes whether the Kentucky Court of Appeals unreasonably applied the law to the facts of this case.

Here, the Kentucky Court of Appeals reviewed Baker's signed guilty plea along with the video record of the plea colloquy and found that Baker knowingly and willingly entered his guilty plea. In making this determination, the court explained that both counsel and the Court reviewed the plea agreement with Baker and he acknowledged that he understood the contents and consequences of his plea. The court noted that there was no indication that Baker was coerced into pleading guilty or that he was misinformed regarding the circumstances surrounding his plea. Taking these facts into consideration, the court found that counsel's performance was not deficient and that the trial court properly denied Baker's ineffective assistance of counsel claim. Review of the Court of Appeal's analysis demonstrates that the state court did not unreasonably apply *Strickland* or *Hill* in determining that counsel was not constitutionally deficient as suggested by Baker. As a result, Baker has not shown that he received ineffective assistance of counsel in this regard and he is not entitled to relief under § 2254 on this ground.

**b.    Sentencing**

16

Baker further alleges that his counsel was ineffective for allowing him to be sentenced under the versions of K.R.S. §§ 218A.1412 and 532.080 in place prior to HB 463's effective date. Specifically, Baker claims that he was entitled to be sentenced under K.R.S. §§ 218A.1412 and 532.080 as amended by HB 463 even though HB 463 was not in effect at the time of his guilty plea and sentencing. (R. 1-1, at 3-9). In support of this claim, Baker cites to K.R.S. § 446.110. (*Id.* at 3, 6). Baker contends that his counsel's deficient performance in this regard prejudiced him as it resulted in his receipt of a longer sentence. *(Id.* at 6). For the reasons set forth below, Baker's claim is without merit.

As noted by the Kentucky Court of Appeals, K.R.S. § 446.110 provides "[i]f any penalty, forfeiture or punishment is mitigated by any provision of the new law, such provision may, by the consent of the party affected, be applied to *any judgment pronounced after the new law takes effect*." K.R.S. § 446.110 (emphasis added). Here, Baker's judgment was pronounced on May 20, 2011, before HB 463 became effective. Thus, he was not entitled to its application to his judgment pursuant to K.R.S. § 446.110.[4] As Baker was not entitled to application of HB 463 at the time of his sentencing on May 20, 2011, counsel's performance was not deficient in "allowing" him to be sentenced under the versions of K.R.S. §§ 218A.1412 and 532.080 that were in effect at the time.

To the extent Baker is arguing his counsel was ineffective for failing to advocate for his sentencing to occur after the effective date of HB 463, so he could have benefitted from the

---

[4]Baker further cites to *Coleman v Commonwealth*, 169 S.W. 595 (Ky. 1914) to support his contention that he should have been sentenced under the statutes as amended by HB 463. However, *Coleman* does not support this proposition. The Court in *Coleman* held that "the punishment in force when the offense is committed" should be followed unless "the punishment is definitely mitigated by the new law and the accused consents, as provided in section 465, that judgment may be pronounced under the new law." *Coleman,* 169 S.W. at 597. Baker's problem here remains that his judgment was pronounced prior to HB 463's effective date. Thus, he could not consent to its application to his judgment.

amendments contained therein, his argument is also without merit.  On appeal of the trial court's

denial of Baker's RCr 11.42 Motion, the Kentucky Court of Appeals considered this argument and

concluded that the record refuted such a claim.  As a result, the Court of Appeals found Baker failed

show deficient performance as required by the first prong of *Strickland*.    In making this

determination, the Court of Appeals held:

> Baker's counsel did, in fact, advocate for his sentencing to take place after the
> effective date of HB 463 and for the trial court to, at the very least, take into account
> HB 463 during sentencing.  Simply because the trial court denied Baker's counsel's
> request does not mean that counsel failed to advocate for her client or was otherwise
> deficient.

(R. 13-3, at 10).

The record supports the state court's decision on this issue.  After Baker entered his guilty

plea in this matter, his trial counsel, Attorney Kidd, requested the court set sentencing in June 2011,

after HB 463's effective date.  The prosecuting attorney objected to her request.  The trial court judge

decided to set Baker's sentencing on May 20, 2011.  At sentencing, Attorney Kidd again requested

the court for a continuance until June, stating:

> This one has been a difficult one for Mr. Baker and for me because of the new drug
> laws that are looming.  Nineteen days from now he would be looking at a very
> different penalty range.  He would be looking at a maximum of twenty. . . rather than
> he's looking at twenty to fifty or life today; and he benefits from the fact that the
> amount is less than 4 grams, in the new laws there's a threshold for the amount which
> would make his a Class C felony; and he also benefits from the double enhancement
> prohibition, so he can't be PFO and also a subsequent offender. . . I would ask the
> court to reconsider sentencing him today and passing it to next month to sentence
> him, you know, so that he can get the benefit of the new law.

(R. 13-3, at 9-10).

Review of the record demonstrates that Baker's trial counsel diligently advocated for his

sentencing to take place after June 8, 2011 so that he could be given the opportunity to benefit from

the changes in the law.  The Commonwealth objected to defense counsel's request and argued that Baker should not be afforded the benefit of the new law.  The fact that the trial court denied Attorney Kidd's request and proceeded with sentencing on the open plea on May 20, 2011 does not constitute deficient performance on counsel's part.  Thus, Baker has not met his burden of demonstrating that the state court's decision that he did not receive ineffective assistance of counsel was contrary to or involved an unreasonable application of federal law.  Baker is not entitled to relief on this ground.

### 2.    Claim that counsel was ineffective for failing to conduct adequate pretrial preparation and investigation.

Baker alleges he received ineffective assistance of counsel because Attorney Kidd did not take action to adequately prepare for trial.  Specifically, Baker claims that Attorney Kidd failed to: 1) adequately meet with him prior to trial; 2) interview the witnesses he provided her; 3) obtain the confidential informant's criminal history; and 4) investigate for mitigating evidence to present at the penalty phase at trial, such as Baker's substance abuse history and dysfunctional family life growing up.  (R. 1-1, at 9-13).  According to Baker, counsel's failure to take these actions forced him to plead guilty.  (*Id.* at 11).  For the reasons set forth below, Baker's claim is without merit.

First, Baker's own statements made under oath at his guilty plea refute his allegations. During the plea colloquy, Judge Daughtery specifically asked Baker if he had had sufficient time to discuss this case with his counsel and whether he was satisfied with his counsel's representation.  Baker responded in the affirmative to both inquiries.  Had Baker been dissatisfied with his counsel's pretrial preparation, or lack thereof, he had an opportunity to present his issue to the court at that time.  Instead, he confirmed his satisfaction with his attorney's representation.  "Solemn declarations

in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Thus, Baker is bound by his averments made at his guilty plea.

Second, these contentions of ineffective assistance of counsel were raised by Baker in his

RCr 11.42 Motion and on appeal and were rejected by the state courts. After the RCr 11.42 hearing,

the trial court denied Baker's request for relief finding that Baker did not receive ineffective

assistance of counsel. (R. 13-7). On appeal, **t**he Kentucky Court of Appeals applied *Strickland* to

Baker's claims of ineffective assistance of counsel and concluded that this issue failed on the first

prong of *Strickland*. (R. 13-3, at 9). The court stated:

> The record demonstrates that Baker's counsel investigated and presented mitigating
> evidence. The video record of Baker's sentencing hearing demonstrates that his
> counsel presented evidence concerning Baker's lengthy drug addiction and notified
> the trial court that Baker had received limited treatment for his addictions.
> Furthermore, as the trial court in the present case found, at the RCr 11.42 hearing,
> Baker's counsel conducted a thorough background check of the informant and spoke
> with the witness. In sum, the record supports this finding. For these reasons, counsel
> was not deficient in her investigation or presentation of mitigating evidence, and this
> issue fails the first prong of the *Strickland* analysis.

(*Id.*).

As stated above, the question on habeas review is whether the Kentucky Court of Appeals

unreasonably applied the law to the facts of this case. 28 U.S.C. § 2254(d)(1). Review of the record

of the evidentiary hearing reveals that the Kentucky Court of Appeal's application of *Strickland* was

reasonable.

Under the first prong of *Strickland*, counsel was not deficient for failing to adequately meet

with Baker prior to trial or to interview potential witnesses.[5] At the RCr 11.42 hearing held by the

---

[5]Baker identifies four potential witnesses that he felt his counsel should have interviewed, along with
what he believed each witness would have testified to. Baker has not, however, provided any actual proof,
by affidavit or otherwise, to substantiate his rendition of what each individual's testimony would be at trial.

trial court, Baker's trial counsel was called to testify.  (R. 22, DVD of RCr 11.42 hearing, 11/16/2012, at 11:05:41 - 11:24:07).  Attorney Kidd testified that she visited Baker in jail on multiple occasions prior to trial[6] and recalled speaking with Baker regarding potential witnesses. (*Id*. at 11:08:02 - 11:10:43).  Counsel testified that Baker had requested she obtain a copy of the confidential informant's criminal history, which she did, as was her standard procedure at the time. (*Id*. at 11:09:18 - 11:09:44).  She also testified that she directed her investigator to go interview the only other person present during the drug transaction, Renada Penman.  (*Id*. at 11:09:44 - 11:10:04). When asked if she was familiar with certain other witnesses, counsel testified that the only individuals present during the drug transaction were the confidential informant, Baker, and Renada Penman, and thus she did not believe that there were further witnesses that would have had relevant information about the alleged crime.  (*Id*. at 11:10:29 - 11:10:40).

Further, counsel was not deficient for failing to investigate for or present mitigating evidence. When asked if she had conducted any sort of investigation for mitigating evidence to present at the penalty phase of trial, Attorney Kidd testified that she spoke with Baker about his long history of substance abuse and she had contemplated calling his wife to present testimony on that issue.  (*Id*. at 11:10:40 - 11:11:40).  She also stated that she had considered calling a probation officer to attempt to elicit testimony about the different types of drug treatment available to defendants with substance

---

[6]During her testimony, Attorney Kidd described a number of her meetings with Baker.  Specifically, she testified she recalled meeting with Baker by herself as well as with Attorney Susanne McCollough, Baker's counsel in a similar case arising out of Boyle County, Kentucky.  She also described meeting with Baker at the jail with the law enforcement officer involved in this matter and with Commonwealth's Attorney Sims.  Attorney Kidd recalled meeting with Baker on another occasion during which she and Baker listened to his jail phone calls.  Thus, Attorney Kidd's statement that she had visited Baker multiple times before trial was supported by her testimony.

abuse problems. (*Id*. at 11:11:41 - 11:11:57). Counsel testified that she did not do any further investigation into mitigation for the penalty phase once Baker decided to enter a guilty plea as further investigation was unnecessary. (*Id*. at 11:11:58 - 11:12:05).

Moreover, as noted by the Kentucky Court of Appeals, Attorney Kidd did present mitigating evidence to the trial court at sentencing. Specifically, she presented evidence concerning Baker's lengthy drug addiction and informed the trial court that Baker had received limited treatment for his addictions. As such, the sentencing court was aware of Baker's substance abuse history at the time it imposed his sentence and there was no failure to present mitigating evidence.

Based on the foregoing, the Kentucky Court of Appeals reasonably determined that Baker's trial counsel performed effectively under *Strickland* and that Baker therefore did not receive ineffective assistance of counsel as he now complains. As Baker has not shown that he received ineffective assistance of counsel, he is not entitled to relief under § 2254 on this basis.

> **3.** **Claim that counsel was ineffective for allowing Baker's Presentence Investigation Report (PSI) to contain misleading and improper information at sentencing.**

Baker claims that counsel rendered ineffective assistance by allowing him to be sentenced using a PSI containing erroneous, outdated information. (R. 1-1, at 15). Specifically, Baker claims that trial counsel's ineffective assistance in this regard resulted in his receipt of a longer sentence and denied him the opportunity "to be sentenced under a [sic] Alternative to Sentencing program" such as a substance abuse treatment program. (*Id*.).

K.R.S. § 532.050(6) provides, "[b]efore imposing sentence, the court shall advise the defendant or his or her counsel of the factual contents and conclusions of any presentence investigation . . . and afford a fair opportunity and a reasonable period of time, if the defendant so

requests, to controvert them." K.R.S. § 532.050(6). When presented with this issue on appeal, the Kentucky Court of Appeals held that "while errors did exist on Baker's PSI form, we disagree that they resulted in the imposition of a longer sentence." (R. 13-3, at 11). The court went on to hold:

> The record from the sentencing hearing shows Baker's counsel informing the trial court of the errors contained in the PSI. The trial court, counsel, and Baker briefly discussed the errors, and together, they determined that their correction would have no impact on Baker's sentencing. In these facts, we see no deficiency on the part of Baker's counsel, as she brought the errors to the attention of the trial court and made reasonable efforts to ensure they would not prejudice her client. For this reason, the trial court correctly concluded that Baker's claim regarding his PSI form fails the first prong of the *Strickland* standard.

(*Id*.).

As the record directly refutes Baker's claim that his counsel was ineffective for allowing him to be sentenced using an inaccurate PSI, his argument is without merit. Trial counsel raised the errors in Baker's PSI at sentencing, pursuant to K.R.S. § 532.050(6), and it was agreed that the correction of those errors would have no effect on Baker's sentence. Accordingly, the Kentucky Court of Appeal's decision that Baker failed to meet the first prong of the *Strickland* standard requiring Baker to show deficient performance by counsel was not contrary to or an unreasonable application of the law and Baker is not entitled to habeas relief on this ground.

**D.    Merits of Procedurally Defaulted Claims**

In addition to being procedurally defaulted, Baker's claims of trial court error fail on the merits.

**1.    Claim that the trial court erred when it accepted Baker's guilty plea and enhanced his sentence under both K.R.S. §§ 218A.1412 and 532.080.**

**a.    Guilty Plea**

Regarding his guilty plea, Baker appears to argue that the trial court erred for accepting his guilty plea pursuant to a plea agreement that violated Kentucky law. In particular, Baker argues that he should not have received a sentence of more than twenty years under K.R.S. §§ 218A.1412 and 532.080 as amended by HB 463 and "the twenty-five (25) years he plead [sic] guilty to violates the Fifth, Sixth, and Fourteenth Amendment [sic] to the United States Constitution." (R. 1-1, at 19). He also argues that "the Plea Agreement that he entered into violates any and all sentencing schemes, and violates his right to a fair and impartial plea agreement." (*Id*.). However, this claim is without merit because Baker did not enter into a plea agreement with the Commonwealth. As stated above, Baker entered an open guilty plea before the trial court prior to the effective date of HB 463 and, thus, was not entitled to the application of HB 463. As Baker has not shown any trial court error in this regard, his claim does not warrant § 2254 relief.

**b.    Sentencing**

Baker further argues that the trial court erred in imposing a sentence of twenty-five years. Specifically, Baker claims that the trial court erred in subjecting him to double enhancements under both K.R.S. §§ 218A.1412 and 532.080. (R. 1-1, at 17). In support of this contention, Baker claims that Kentucky case law in effect at the time he was sentenced prohibited a trial court from enhancing a defendant's sentence under both K.R.S. § 218A and K.R.S. § 532.080. However, Baker's argument is unconvincing.

Generally, errors in sentencing by the state court do not present a federal issue reviewable in habeas corpus proceedings. "Wide discretion is accorded a state trial court's sentencing decision. Claims arising out of that decision are not generally cognizable upon federal habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly

unauthorized by law." *Lucey v. Lavine*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001) (citing *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir.1987)); *See also Schwartz v. Neal*, 175 F. App'x 265, 268-69 (10th Cir. 2006).

Baker cites to *Harrison v. Commonwealth*, 842 S.W.2d 531, 532 (Ky. Ct. App. 1992) and *Peyton v. Commonwealth*, 931 S.W.2d 451, 455 (Ky. 1996) in an attempt to demonstrate that the trial court erred in subjecting him to double enhancements under K.R.S. §§ 218A.1412 and 532.080. However, review of the Kentucky case law on this issue demonstrates that Baker is not entitled to the relief he seeks.

The question of whether a defendant could be subject to double enhancements under K.R.S. Chapter 218A and K.R.S. § 532.080 has "had a bit of a contradictory odyssey throughout Kentucky case law." *Commonwealth v. Hall*, 2010 WL 1404584, at *3 (Ky. Ct. App. Apr. 9, 2010) (unpublished decision). In *Peyton*, the Kentucky Supreme Court held, "the PFO statute is applicable to the violation of the Controlled Substance Act, even if the Act is outside the penal code and has its own specific sentencing structure[.]" *Peyton*, 931 S.W.2d at 455 (citing *Harrison v. Commonwealth*, 842 S.W.2d 531 (Ky. Ct. App. 1993)). In *Harrison*, however, the appellate court relied on *Dawson v. Commonwealth*, 756 S.W.2d 935 (Ky. 1988), to hold that the trial court could not sentence under both K.R.S. Chapter 218A and K.R.S. § 532.080, but could choose one or the other. *Harrison*, 842 S.W.2d at 532.

In 2002, the Kentucky Supreme Court revisited this issue in *Morrow v. Commonwealth*, 77 S.W.3d 558 (Ky. 2002). In *Morrow*, the defendant had entered into conditional guilty pleas in which he admitted he was subject to penalty enhancement as both a K.R.S. § 218A.1412 "second or subsequent" offender and a second degree persistent felony offender under K.R.S. § 532.080(5).

*Morrow*, 77 S.W.3d at 559.   Defendant's appeal focused on whether his two prior first degree trafficking convictions for which he received concurrent sentences could be used to enhance under both K.R.S. Chapter 218A, the Kentucky Controlled Substances Act, and K.R.S. § 532.080, the persistent felony offender statute.   The Kentucky Supreme Court concluded they could be so used and still be consistent with the General Assembly's intent and purpose for providing enhancement provisions under each statute, provided that separately qualifying offenses under each statute occurred, even if the sentence for each offense of conviction was merged or run concurrently.   *Id.* at 560-61, 564.   Thus, if a defendant has a prior qualifying conviction for enhancement purposes under K.R.S. Chapter 218A and a separate prior qualifying conviction for enhancement purposes under K.R.S. § 532.080, these separate offenses of conviction can be used to apply separate enhancements under both statutes.   *Id.* at 561-62.   However, if a defendant has only one previous offense of conviction, that one conviction cannot be used to enhance under both Chapter 218A and K.R.S. § 532.080.   *Id.* at 562.   The Kentucky Supreme Court concluded that:

> Because Appellant's prior criminal record contains two convictions for first degree trafficking in a controlled substance, the trial court properly sentenced him in accordance with both KRS 218A.1412 "second or subsequent offense" enhancement and the KRS 532.080(5), second degree PFO enhancement.

*Id.* at 564.

The *Morrow* holding dictates that in Baker's case, if Baker had a previous conviction for first degree trafficking as well as some other felony conviction upon which the Commonwealth relied in order to charge him with being a persistent felony offender in the first degree, the state trial court properly applied both the subsequent offender and the PFO enhancements in sentencing him.   Here, review of the record shows that Baker had 21 prior felony convictions, 11 of which were drug

26

trafficking convictions.  (R. 13-7).  Baker had ample separate trafficking and felony convictions to form the basis for proper enhancement under both K.R.S. §§ 218A.1412 and 532.080 at the time of his sentencing in May 2011.  Accordingly, despite Baker's reliance upon *Harrison* and *Peyton,* the Kentucky case law in effect at the time of Baker's sentencing does not support his claim for relief. As Baker's sentence was authorized under Kentucky law, he has not met his burden of demonstrating that the trial court's imposition of his sentence resulted in a decision that was contrary to or involved an unreasonable application of federal law.  Nor has Baker shown that his sentence was based on an unreasonable determination of the facts in light of the evidence presented.  Baker is not entitled to relief on this ground.[7]

> **2.    Claim that the trial court erred when it sentenced Baker using an inaccurate Presentence Investigation Report**.

Baker argues that the trial court erred when it failed to follow the sentencing procedures of K.R.S. § 532.050 regarding presentence procedure for felony convictions.  Specifically, Baker claims that the Court rushed the completion of his Presentence Investigation Report (PSI) so that he could be sentenced before HB 463 went into effect.  (R. 1-1, at 14).  As a result, Baker contends that the probation officer who prepared the PSI did not interview him and his PSI contained outdated and erroneous information.  (*Id*. at 14-15).  Baker specifically argues that his PSI was defective because it did not contain a risk-needs assessment as required under the law.  (*Id*. at 15).  According to Baker,

---

[7]Baker also requests that the sentencing court's error be "viewed under Papable Error of the Sentencing Court; pursuant to RCr 10.26."  (R. 1-1, at 18-19; R. 15, at 2).  However, RCr 10.26 is not a mechanism for obtaining post-conviction relief.  Rather, it is a rule allowing palpable error that was insufficiently raised or preserved to serve as grounds for relief in a motion for a new trial filed pursuant to RCr 10.06 or in a direct appeal.  *See Vaughn v. Commonwealth*, No. 2005–CA–002259–MR, 2006 WL 2520309, at *1 (Ky. Ct. App. Sept. 1, 2006); *see also Chipman v. Commonwealth*, No. 2007–CA–000329–MR, 2008 WL 682439, at *3 (Ky. Ct. App. Mar. 14, 2008) ("RCr 10.26 cannot be used to obtain post-conviction relief").  As such, Baker is not entitled to review under RCr 10.26.

this error by the trial court resulted in his receipt of a longer sentence.  However, this claim lacks merit for a number of reasons.

Baker's claim that the trial court failed to follow the procedures set forth in K.R.S. § 532.050, resulting in him being sentenced using an erroneous PSI, is a challenge to the state court's application of state law and, therefore, it does not present an issue that is subject to habeas review by this Court.  The Supreme Court has held that "a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).  The Sixth Circuit Court of Appeals has also consistently applied this principle.  *See King v. Trippett,* 27 F. App'x. 506, 510 (6th Cir. 2001) ("district court properly found that trial court's alleged misapplication of state law was not cognizable in a federal habeas corpus proceeding"); *Matlock v. Rose*, 731 F.2d 1236, 1242 (6th Cir. 1984) ("Errors of application of state law . . . are usually not cognizable in federal habeas corpus actions.").

For the first time in his Reply, recognizing that he is not entitled to habeas relief based on his claim regarding the application of state law, Baker argues that the trial court's error in sentencing him using an inaccurate PSI Report constituted a violation of his rights under the United States Constitution, including his right to due process.  (R. 15, at 7).  However, even considering Baker's brief attempt at framing his argument as a violation of the United States Constitution, he is not entitled to the relief he seeks.

"[T]he mere presence of ... inaccurate information in a [presentence report] does not constitute a denial of due process." *Hili v. Sciarrotta*, 140 F.3d 210, 216 (2d Cir. 1998).  However, a sentence may violate due process if it is carelessly or deliberately pronounced on an extensive and

28

materially false foundation which the defendant had no opportunity to correct. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested information at sentencing). Further, the petitioner must show that the trial judge relied on the allegedly false information. *See United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).

In this case, as discussed above, Baker has not shown that the alleged errors in his PSI were relied upon by the trial judge when imposing his sentence in this matter.  As observed by the Kentucky Court of Appeals in its Opinion affirming the denial of Baker's RCr 11.42 Motion, Baker was given the opportunity at sentencing to inform the court of any errors contained in the PSI Report. (R. 13-3, at 11).  At that time, "the trial court, counsel, and Baker briefly discussed the errors, and together, they determined that their correction would have no impact on Baker's sentencing."  (*Id*.). Thus, the record reflects that Baker was given a meaningful opportunity to rebut any errors contained in his PSI and that the trial judge did not rely on any false information when imposing sentence.

Further, while Baker argues that his PSI was deficient for not containing a risk-needs assessment, the version of K.R.S. § 532.050 in effect at the time of Baker's guilty plea and sentencing did not include a requirement that a PSI include a risk-needs assessment.  *See* K.R.S. § 532.050 (West 2009).  Although K.R.S. § 532.050 was amended on July 1, 2013 to include such a requirement, this requirement did not exist at the time of Baker's conviction and sentence.  As such, any absence of a risk-needs assessment would not have constituted a violation of Kentucky law

29

and the trial court did not fail to follow the procedures of K.R.S. § 532.050 in that regard.[8]  Based on the foregoing, Baker has not demonstrated any trial court error warranting habeas relief under § 2254.

> **3.    Claim that the trial court erred for failing to impose a sentence for the underlying trafficking charge prior to sentencing Baker on the Persistent Felony Offender (PFO) charge.**

Baker argues that the trial court erred when it did not impose a sentence for his underlying trafficking charge prior to sentencing him under the Persistent Felony Offender statute.  (R. 1-1, at 20-21).  Baker, citing to *Davis v. Manis*, 812 S.W.2d 505 (Ky. 1991) and *Hulett v Commonwealth*, 834 S.W.2d 688 (Ky. Ct. App. 1992), claims that "it has long been held that a defendant cannot be convicted as a Persistent Felony Offender unless the term of imprisonment was imposed as punishment for the underlining [sic] charge."  (*Id*. at 20).  According to Baker, the reasoning behind imposition of separate sentences is two-fold.  First, it prevents the introduction of prior bad acts to a jury at trial.  Second, in the event a defendant successfully challenges the application of the Persistent Felony Offender enhancement after sentence is imposed, separate sentences would allow the underlying sentence to stand and a court would not have to retry the entire case**.**  (*Id*. at 20-21).  Baker's argument is without merit.

This claim, as with the claim above, is an attempt to challenge the application of state procedural law and, therefore, it does not present an issue that is subject to habeas review by this

---

[8] Baker also cites to K.R.S. § 218A.275 in support of his contention that the law required his PSI include a Risk-Needs Assessment.  However, the version of K.R.S. § 218A.275 in effect at the time of Baker's conviction and sentencing does not support his argument.  K.R.S. § 218A.275 permitted a court to order a defendant found guilty of possession of a controlled substance, first offense, to participate in a one-year treatment program in lieu of a prison sentence and to void the conviction upon successful completion of said program.  *See* K.R.S. § 218A.275 (West 2005).  Baker here was convicted of trafficking in a controlled substance, second or subsequent offense, not possession.  Thus, this statute did not apply to him.

Court. *See Bradshaw*, 546 U.S. at 76 (citing *Estelle,* 502 U.S. at 67-68; *Mullaney,* 421 U.S. at 691). However, again recognizing this, Baker raises in his Reply that the trial court's failure to impose separate sentences on the charges violated his right to due process and equal protection under the Fourteenth Amendment to the United States Constitution. Review of Baker's argument shows that he is not entitled to relief under this claim.

As discussed above, errors in sentencing by the state court generally do not present a federal issue reviewable in habeas corpus proceedings unless a petitioner can show the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lavine*, 185 F. Supp. 2d at 745 (citing *Haynes*, 825 F.2d at 923-24); *see also Schwartz*, 175 F. App'x at 268-69.

Baker's citation to *Davis* and *Hulett* is misplaced**.** In *Davis*, the defendant was charged with possession of cocaine and being a persistent felony offender. *Davis*, 812 S.W.2d at 506. A jury trial was held, at which the jury convicted defendant of the possession charge, imposing a $1,000.00 fine and no term of incarceration. *Id*. However, the jury also convicted defendant of being a Persistent Felony Offender and imposed a sentence of ten years for that charge. *Id*. The trial court, viewing the verdicts as inconsistent, vacated the persistent felony offender conviction and ordered a retrial on that portion of the case. *Id*. Defendant filed a writ of prohibition to prevent the court from retrying the PFO charge which the appellate court denied. *Id*. Defendant appealed and the Kentucky Supreme Court held that a defendant cannot be convicted as a persistent felony offender unless a term of imprisonment is imposed as punishment on the underlying charge. *Id*. As defendant received only a fine on the underlying charge, the court held that no predicate existed for the imposition of a persistent felony offender sentence and, thus, defendant could not be retried on that charge. *Id*.

In *Hulett,* the defendant proceeded to trial on charges of trafficking in cocaine and for being a persistent felony offender in the first degree.   *Hulett,* 834 S.W.2d at 689.   The jury returned a verdict of guilty to trafficking in cocaine.  *Id*.  Rather than go through the separate proceeding on the PFO charge, defendant reached an agreement with the Commonwealth whereby he would plead guilty to the PFO charge in exchange for the minimum sentence allowed by statute, ten years, being fixed as the penalty.  *Id*.  The court permitted defendant to enter his plea and sentenced defendant to the ten years agreed to pursuant to the plea agreement.  *Id*.  Defendant appealed, arguing that the court committed reversible error in its failure to "fix" a sentence on the underlying trafficking conviction as a prerequisite to the persistent felony offender plea agreement and sentence.  *Id*. at 689-90.  The Kentucky Court of Appeals affirmed the trial court's judgment.  *Id*. at 692.  In rendering its decision, the court found that the case was distinguishable from *Davis* because the defendant in *Davis* received a fine rather than imprisonment on his underlying conviction.  *Id*. at 690.  The court held that "there is no indication in this case that a fine in lieu of prison sentence was even considered as the penalty for the underlying charge, let alone imposed."  *Id*.  As such, the court found no error in the trial court's sentencing procedure.  *Id.*

Here, as was the case in *Hulett*, there is no indication that the court ever considered imposing a fine as Baker's sentence in lieu of imprisonment for his underlying trafficking offense.  In fact, the record demonstrates that the trial judge believed that Baker's sentence of twenty-five years of imprisonment was appropriate considering his extensive criminal history and the likelihood Baker would have received a much harsher sentence had he proceeded to trial.  As such, Baker's reliance upon these Kentucky cases is misplaced and he has not shown the trial court erred when it sentenced him to a sentence of twenty-five years.  Further, as Baker's sentence was authorized under Kentucky

32

law, it was not imposed in violation of due process and, thus, Baker has not shown that he is entitled to relief under § 2254.

> **4.** **Claim that the trial court erred for sentencing Baker to a sentence disproportionate to the sentences of other defendants charged with the same offenses.**

Baker, citing to K.R.S. § 532.080(10)(a) (West 2011), again claims that the sentence he received exceeded the statutory authorized maximum sentence under the law and, thus, the imposition of his sentence was in violation of his due process rights. (R. 1-1, at 22). Baker further argues that his sentence was imposed in violation of the Equal Protection Clause of the United States Constitution because other individuals that were convicted of similar crimes received significantly lower sentences than his. (*Id*. at 24). According to Baker, his disproportionate sentence constituted a violation of the Eighth Amendment prohibition on cruel and unusual punishment. (*Id*. at 25).

Baker's first claim of a due process violation because his sentence exceeded the statutory maximum is without merit because the Court has already found that Baker's sentence did not exceed the maximum penalty permitted under Kentucky law. As his sentence was authorized under Kentucky law, there was no violation of Baker's due process rights under the United States Constitution and he is not entitled to § 2254 relief on this ground.

To the extent that Baker argues that his sentence was imposed in violation of his constitutional rights under the equal protection clause and the Eighth Amendment's prohibition on cruel and unusual punishment, his claim also fails. The Eighth Amendment contains a narrow proportionality principle that applies to non-capital sentences. *Ewing v. California*, 538 U.S. 11, 20 (2003). A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). However, the Eighth

33

Amendment forbids extreme sentences that are grossly disproportionate to the crime. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991).

Further, while "a State is justified in punishing a recidivist more severely than it punishes a first offender," *Solem v. Helm*, 463 U.S. 277, 296 (1983), the state court must consider the objective criteria surrounding the sentence. This includes the gravity of the offense and harshness of the penalty, the sentences imposed on other defendants in the same jurisdiction, and the sentences imposed by other jurisdictions for the same crime. *Id.* at 292.

In support of his argument, Baker provides names of other defendants: Paula Price, Tamatha Sabastian, Pernell Doneghy, Author Ison and A. Nisbet as examples of individuals he claims received lighter sentences for the same criminal convictions. (R. 1-1, at 24). Baker further attached what appears to be a newspaper article regarding the criminal judgment of a defendant, Jason Kidd, who he claims "received the benefit of the new House Bill." (R. 1-1, at 25; R. 1-2, at 19). However, Baker does not provide any further information about these individuals. In particular, he does not provide the specific crimes they were convicted of, the dates of conviction, the sentences received, or any information regarding their criminal histories. Without this information, Baker has not adequately supported his claim.

Further, review of the record in this matter reveals that Baker has an extensive criminal history. Specifically, as pointed out by the trial court, Baker had 21 prior felony convictions, including 11 prior trafficking convictions at the time he was sentenced in this case. These charges formed the basis for Baker's qualification as a second offender under K.R.S. § 218A.1412 and a Persistent Felony Offender in the First Degree under K.R.S § 532.080. Under Kentucky law at the time, a defendant in Baker's position faced a sentencing range of twenty years to life in prison.

34

Baker received a sentence of twenty-five years, just five years more than the minimum he could have received and substantially less than the maximum. Although Baker takes issue with the fact that his judgment was imposed so close in time to the effective date of HB 463, which decreased the penalties associated with the crimes he stood convicted of, the sentence he received was authorized under the law. "The gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Lockyer v. Andrade*, 538 U.S. 63, 77 (2003). Baker has not shown that this is such a case. As such, he has not demonstrated that he is entitled to § 2254 relief on this basis.[9]

### E.    Merits of Cumulative Error Claim

Finally, Baker argues that his "Substantial Rights Has [sic] Been Affected By The Cumulative Errors Manifesting [in] A Fundamentally Unfair Trial/Plea Setting." (R. 1-1, at 25). In particular, Baker argues that the cumulative errors of his trial counsel prejudiced his substantial rights to a fair and impartial plea agreement and the trial court acted in a way that was contrary to the law. (*Id.* at 25-26). Baker raised this argument to the Kentucky Court of Appeals which rejected it on the basis that the record lacked any indication of cumulative error. (R. 13-3, at 12).

This Court is foreclosed from considering this claim because, post AEDPA, cumulative error is not a ground for relief under § 2254 in the Sixth Circuit. *See Williams v. Anderson*, 460 F.3d at 81 ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue.") (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *see also Scott v. Elo*, 302 F.3d 598, 607 (6th Cir. 2002) ("The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated

---

[9]Baker also briefly argues that the trial court violated Section Two of the Kentucky Constitution for holding his preliminary hearing a day late. (R. 1-1, at 22). However, Baker does not provide any support for this claim and does not explain how any such violation would warrant relief under § 2254.

in order to support relief."). Accordingly, Baker's argument here cannot afford him any relief and this claim fails.

## III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant.  A certificate may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id*.  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

In this case, reasonable jurists would not debate the denial of Baker's § 2254 Petition or conclude that the issues presented are adequate to deserve encouragement to proceed further.  *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).  Accordingly, it will be recommended that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## IV.    CONCLUSION AND RECOMMENDATIONS

For the reasons stated herein, **IT IS RECOMMENDED** that:

(1)      the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (R. 1), **be denied** and this matter **be dismissed**;

(2)      a Certificate of Appealability **be denied** by the District Court in conjunction with the Court's entry of its final order in this matter;

(3)      Judgment in favor of the Respondent **be entered** contemporaneously with the District Court's entry of its final order; and,

(4)      this case **be stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 14th day of February, 2017.



Signed By:

___*Candace J. Smith*___

**United States Magistrate Judge**

J:\DATA\habeas petitions\2254 General\14-358-JMH 2254 R&R final.wpd

37